[Civ. No. 6098.   Fourth Dist.   Apr. 7, 1961.]

CLYDE F. MACK, Respondent, v. VALLEY MOTOR LINES, INC. (a Corporation), Appellant.

FERN V. HOAGLAND, Individually and as Guardian, etc., et al., Appellants, v. CLYDE F. MACK et al., Respondents.

Cardozo, Trimbur & Nickerson, J. M. Trimbur and W. A. Martin for Appellants.

Hartwell & Nelson, Gordon W. Nelson, John S. Hartwell, Sedgwick, Detert, Moran & Arnold and Frank Creede, Jr., for Respondents.

GRIFFIN, P. J.—In these consolidated actions on appeal, the general summary of the case, as adopted by all parties, is that plaintiff Clyde F. Mack, the operator of the Reo tractor and flatbed trailer involved in the accident, brought action number 103073 against defendant and appellant Valley Motor Lines, Inc., the owner of another truck (an International tractor, trailer and semitrailer), to recover damages for personal injuries. Action number 104630 was brought by plaintiffs and appellants Fern V. Hoagland, individually and as guardian of Jeanette Hoagland, Bruce Hoagland and Dale Hoagland, minors, and Valley Motor Lines, Inc., a corporation, against defendants and respondents Clyde Mack and his employer, Western Cargo Company, a corporation, for damages for the wrongful death of Neal Hoagland, the husband of Fern V. Hoagland and father of the minor children, which death occurred as a result of the same accident. Valley Motor Lines, Inc. sought to recover for damages to the truck which Hoagland was driving and for damages to the cargo. All defendants denied negligence on their part and alleged contributory negligence on the part of plaintiffs. A verdict was rendered "in favor of plaintiff Clyde F. Mack." Damages were assessed at $20,000. Since no point is made as to the form of the verdict, we will assume that in action number 104630 the jury also denied plaintiffs a recovery against both defendants. Defendant Valley Motor Lines, Inc., appealed from the judgment entered in case number 103073, and plaintiff Fern V. Hoagland et al., and Valley Motor Lines, Inc., appealed from the judgment entered in action number 104630.

The collision between these two trucks occurred in Tulare County. Clyde F. Mack was driving Western Cargo Company's Reo truck north on United States Highway 99 on July 30, 1958, at about 3 a.m. when he had tire trouble and pulled off on the right-hand side of the roadway and onto the shoulder. He stopped about one-half mile north of the Goshen overpass. The asphalt roadway at that point has four lanes separated with a dividing strip with both an improved asphalt and an unimproved dirt shoulder. There were no curves in the road at that location.

Decedent Hoagland was driving Valley Motor Lines, Inc., International truck northbound from Los Angeles, and shortly after Mack pulled off the highway with his Reo truck the two trucks collided at or near the place where Mack had

stopped. Hoagland was killed, Mack was injured and the two trucks were severely damaged.

There were two theories as to how the accident occurred. Mack's theory was that Hoagland drove his truck off onto the shoulder and struck Mack's parked truck. The theory of Valley Motor Lines, Inc., was that Mack drove his vehicle back onto the highway directly in front of Hoagland in such a manner that Hoagland could not avoid hitting the left rear end of Mack's truck. There was both direct eyewitness testimony and physical evidence at the scene to support both theories. Apparently the only surviving eyewitness to the accident, other than Mack, was one Merrill C. Curtis, who testified for the defendant Valley Motor Lines, Inc. The other witnesses for defendant were California Highway Patrol officers.

Mack testified that when he reached a point just north of the Goshen overpass, he had some difficulty with one of his tires, in the nature of a retread peeling off, and pulled onto the wide dirt shoulder on the side of the highway to make repairs; that after making the repairs he pulled ahead and up close to the highway, looked in the rear vision mirror for other vehicles and for an opening to pull out; that he had his lights on as well as his turn signal, which was equipped with a bulb and a reflector; that other trucks passed him, blinking their lights and moving over to the inside lane; that finally he observed the truck being driven by Hoagland come over the overpass and travel toward him without blinking its lights; that this truck first struck the trailer of Mack's vehicle, which was at the time of the collision parallel to the highway, six to eight inches off the main traveled way; that it stopped and then came farther on and up to the side of Mack's trailer and hit the cab and that Hoagland's truck then turned over. Mack testified that he then disconnected the batteries of his tractor after the collision.

The witness Curtis, also a Valley Motor Lines, Inc., driver, testified that he had followed Hoagland's vehicle for about 20 miles and near the point of the accident Hoagland was proceeding ahead of him down the middle of the right-hand lane; that he did not see a vehicle parked on the east shoulder of the highway, nor the lights of a vehicle claimed to be parked there; that Hoagland's vehicle seemed to veer to the left before the collision and never to the right, and that it did not travel off of the main highway. He also testified that he heard Mack tell someone that he had pulled back onto the

road and was hit, and that he had been moving down the shoulder at about 5 miles per hour. This witness testified that he told the patrol officer that he had seen the accident but he gave no written statement to them about it.

Highway patrol officers testified that they found the point of impact to be about 4 feet east of the line dividing the two northbound lanes, and about 8 feet west of the east shoulder of the highway, and that the right front of deceased's truck struck the left rear end of Mack's trailer. One officer testified that Mack told him he had fixed his tire, had his semaphore out and was preparing to come back onto the road and was still on the shoulder when the other truck struck his trailer in the rear. This officer found part of a tire recap south of the point he fixed as the point of impact and off of the highway and said that the lights on Mack's truck were operative. He further testified that he found cargo from Mack's trailer on the unimproved shoulder and also on the improved shoulder.

Appellants' sole contention on appeal is that it was prejudicial error for the trial court to refuse to instruct that a violation of either section 543 or section 544, subdivision (a), of the Vehicle Code (starting parked vehicles and turning movements on highways) was presumptively an act of negligence and that no instruction was given in the language of BAJI Number 149 to the effect that:

"If either driver in this accident violated any of the statutes just read to you, a presumption arises that he was negligent. This presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable or justifiable. To prove that such a violation of a statute such as that charged in this case was excusable or justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the person who violated these statutes did what might reasonably be expected of a person of ordinary prudence who desired to comply with the law, acting under similar circumstances."

It is claimed that by refusing this instruction the court deprived defendants of the key instruction on their theory of the case. (Citing *Alarid* v. *Vanier*, 50 Cal.2d 617 [327 P.2d 897].)

It is the claim of respondents that Vehicle Code, sections 543 and 544, subdivision (a), do no more than apply the reasonable man standard or the common-law standard of care to particular traffic situations, and therefore the giving of

BAJI Instruction Number 149 would have been redundant because it, also, in effect, states the same rule. (Citing *Smith* v. *Harger*, 84 Cal.App.2d 361 [191 P.2d 25]; *Hughes* v. *MacDonald*, 133 Cal.App.2d 74 [283 P.2d 360]; *De Young* v. *Haywood*, 139 Cal.App.2d 16 [292 P.2d 917].)

*Alarid* v. *Vanier, supra,* is somewhat factually similar to the instant case. The claimed violation there was of Vehicle Code, section 670 (inadequate brakes) and section 679 (operating vehicle in an unsafe condition). The Supreme Court there held that the giving of an instruction that a presumption of negligence arises from a violation of a statute was proper, but that it should be followed by an instruction to the effect that such presumption is rebuttable and may be overcome by evidence of justification or excuse (citing cases). However, it was held that the failure to give this additional instruction was not prejudicial error in view of the evidence and other instructions given. To the same effect is *Shehtanian* v. *Kenny*, 156 Cal.App.2d 576, 579 [319 P.2d 699], which involved former Vehicle Code, section 526, subdivision (a) (driving entirely within a single lane unless driver has first ascertained that a movement therefrom can be "made with safety") and section 544, subdivision (a), *supra*, (no movement to the left or right upon a roadway unless it can be made "with reasonable safety"). That case involved Vehicle Code sections similar to those involved in the instant case, both of which pertained to the element of reasonable care. It there held that the failure to act within the standards fixed by the Vehicle Code is negligence *per se*, and it was proper to instruct in the language of BAJI Number 149. (See also *Larson* v. *King*, 71 Cal.App.2d 421 [162 P.2d 974].)

It is the general rule that conduct in violation of the Vehicle Code is negligence as a matter of law. (*Benjamin* v. *Noonan*, 207 Cal. 279, 283 [277 P. 1045].) See also *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581, 597 [177 P.2d 279].) An exception appears in Vehicle Code, section 513 (now § 40831) which specifically provides that in a civil action, *proof of speed* in excess of any prima facie limit declared in section 511 (now § 22352) shall not establish negligence as a matter of law, but in all such actions it shall be necessary to establish as a fact that the operation of a vehicle at such excess speed constituted negligence, and section 403.5 (now § 40830) provides certain exceptions when the violations of the Vehicle Code do not constitute negligence as a matter of law. See also *Petersen* v. *Rieschel*, 115 Cal.App.2d 758, 764

[252 P.2d 986]; *Biggar* v. *Carney*, 181 Cal.App.2d 22 [5 Cal.Rptr. 94].)

As to the sections here involved, there do not appear to be any statutory exceptions. In the following authorities, it has been held that the instruction here requested was proper in negligence cases involving a violation of the ''flexible'' or ''reasonable man'' statutes, such as former Vehicle Code, sections 526, 529, 531, 543, 544 and 551; *Neilsen* v. *Uyechi*, 172 Cal.App.2d 508 [342 P.2d 329]; *Gruss* v. *Coast Transport, Inc.*, 154 Cal.App.2d 85 [315 P.2d 339]; *Gunter* v. *Claggett*, 65 Cal.App.2d 636 [151 P.2d 271]; *Pierce* v. *Black*, 131 Cal. App.2d 521 [280 P.2d 913]; *Smith* v. *Harger, supra,* 84 Cal. App.2d 361; *Martin* v. *Nelson*, 82 Cal.App.2d 733 [187 P.2d 78]; *Hickson* v. *Beitel*, 103 Cal.App.2d 391 [229 P.2d 821]; *Satterlee* v. *Orange Glenn School Dist., supra,* 29 Cal.2d 581; *Ferguson* v. *Nakahara*, 43 Cal.App.2d 435 [110 P.2d 1091]; *Shehtanian* v. *Kenny, supra,* 156 Cal.App.2d 576. We conclude that the appellants were entitled to have the jury instructed under BAJI Number 149 upon their theory of the case.

The only remaining question is whether the failure to so instruct was prejudicially erroneous in view of the evidence and other instructions given. Of course, if we accept respondent Mack's testimony as to the facts, he was stationed off of the highway and his truck was not moving at the time. Accordingly, there could be no evidence of a violation of these sections of the Vehicle Code under discussion and it would be proper to refuse the proffered instruction. (*Davis* v. *Erickson*, 53 Cal.2d 860 [350 P.2d 535].) However, other testimony and evidence produced indicates respondents' truck was on or turning onto the highway at the time of the collision and no lights were seen on it in that position by driver Curtis. Respondent Mack testified he did have his lights on and the semaphore or turn signal with a bulb and reflector on it was in the signalling position at the time. He further testified that he was preparing to come back onto the road when appellant's vehicle struck his truck. He further testified that before any movement of the truck occurred he looked in the rear vision mirror for other vehicles and for an opening to pull out. Under appellants' theory of the evidence, if respondent Mack did move out onto the highway he apparently did not see the approaching truck, or he misjudged its location, and the jury might reasonably infer that a sufficient signal was not given at the time. These were factual questions for the determination of the jury, which it apparently resolved against the

appellants. It is presumed that the jury reached its verdict on a theory that is supported by the evidence. (*Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 643 [226 P.2d 897].)

In 35 Cal.Jur.2d 523, footnote 3, in discussing the case of *De Young* v. *Haywood, supra,* 139 Cal.App.2d 16, it is said: "Where the court gave instructions in the language of Veh. Code, §§ 526, 528, 531, 544, but did not specifically instruct that violation of any of the requirements of those provisions would give rise to a presumption of negligence on the part of the violator, the omission did not constitute reversible error where proper instructions were given with respect to the general rules of negligence . . ."

That case held particularly that it could be assumed that had the jury found a violation of any of those rules it would have found the violator guilty of negligence.

In the instant case, the court did give one of defendant's proffered instructions on the subject, that is: "If a person exercised ordinary care and did all that an ordinarily prudent person would have done in the circumstances to avoid an accident, he is not chargeable with negligence or contributory negligence."

Vehicle Code, section 543, was read to the jury, as follows: "No person shall start a vehicle stopped, standing or parked on a highway nor shall any person back a vehicle on a highway unless and until such movement can be made with *reasonable safety.*" (Italics ours.)

In addition, Vehicle Code, section 544, subdivision (a), was read, which states: "No person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with *reasonable safety* and then only after the giving of an appropriate signal in the manner provided herein in the event any other vehicle may be affected by such movement." (Italics ours.)

The court then instructed the jury concerning the basic speed law, then in Vehicle Code, section 510, as follows: " 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway and in no event at a speed which endangers the safety of persons or property.' A violation of this basic rule is negligence."

It is true that the instruction offered omitted the element of proximate cause. (See *Lawrence* v. *Southern Pacific Co.,* 189 Cal. 434 [208 P. 966].) This deficiency probably was corrected by other instructions given on the subject. (*Land-*

*rum* v. *Severin,* 37 Cal.2d 24 [230 P.2d 337].) Additional instructions were given bearing on the question of negligence, ordinary care and prudence. One, offered by appellants, reads: "One test that is helpful in determining whether or not a person was negligent is to ask and answer whether or not, if a person of ordinary prudence had been in the same situation and possessed of the same knowledge, he would have foreseen or anticipated that someone might have been injured by or as a result of his action or inaction. If such a result from certain conduct would be foreseeable by a person of ordinary prudence with like knowledge and in like situation, and if the conduct reasonably could be avoided, then not to avoid it would be negligence."

Another instruction read: "Ordinary care is that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to themselves or to others."

One of respondents' instructions reads: "You will note that the person whose conduct we set up as a standard is not the extraordinarily cautious individual, nor the exceptionally skillful one, but a person of reasonable and ordinary prudence."

Considering all the evidence and instructions given, we conclude that no prejudicial error resulted. (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.